```
                 UNITED STATES DISTRICT COURT
                          FOR THE
                    DISTRICT OF VERMONT


United States of America        :
                                :
          v.                    : Case No. 2:04-CR-47-1
                                :
Pascal Fortier,                 :
               Defendant.       :
```

### MAGISTRATE JUDGE'S REPORT & RECOMMENDATION
(Paper 7)

Defendant Pascal Fortier has filed a motion to suppress evidence obtained from a search of his vehicle, on the grounds that the initial stop of his vehicle was pretextual. He further moves to suppress all statements made to government agents, arguing that he was not given <u>Miranda</u> warnings and any waiver of his rights was not voluntary. For the reasons set forth below, I recommend that the Court DENY Fortier's motion.  (Paper 7).

### Factual Findings

On February 16, 2004, at approximately 9 p.m., Fortier entered the United States from Canada at the Highgate Springs, Vermont, Port of Entry.  He was driving an RTL Transport tractor-trailer loaded with sawdust and wood shavings.  Fortier told the immigration inspector that his

destination was the Co-op Creamery on Federal Street in St. Albans, Vermont.  A RTL Transport pickup truck had entered the United States at the same port of entry about fifteen minutes earlier.

RTL Transport is a Canadian trucking company.  In April 2002, an RTL Transport tractor-trailer carrying approximately 40 pounds of marijuana was intercepted at the Highgate Springs port of entry.  Thereafter, the United States Immigration and Customs Enforcement placed a lookout for all RTL Transport trucks entering the United States. Immigration and Customs Enforcement Agent Dave Magdycz was involved in the 2002 investigation, and periodically received notices that an RTL Transport truck had crossed the border.  Agent Magdycz has four years of experience with Immigration Customs and Enforcement.

About two weeks before the entry in this case, Agent Magdycz received information that RTL transport had changed the registration on three of its tractor-trailers.  The three tractor-trailers were registered to a numbered company at RTL Transport's address.[1]  Agent Magdycz received

---

[1] According to Agent Magdycz's information, a Canadian business may register a vehicle in its own name, or may register a vehicle to an 8-digit number at the company's

2

information that these tractor-trailers had crossed the border several times.  Some of those times, a pickup truck registered to RTL Transport had crossed the border within fifteen minutes to a half an hour of the tractor-trailers. Agent Magdycz asked to be notified if the tractor-trailers registered to the numbered company entered again.  As a result, he was notified of the entry of the two trucks in this case.

Agent Magdycz then asked the Vermont State Police to be on the lookout for the two vehicles.  A short time later, the police informed Agent Magdycz that the two trucks were parked together at a truck stop & gas station in Swanton, Vermont.  At approximately 10:30 p.m., Agent Magdycz began watching the vehicles.  He observed the two drivers meet that night, then watched the next morning as they went to a nearby McDonalds in the pickup and then returned to the tractor-trailer.  The two trucks then drove together to the Co-op Creamery, staying within a mile of each other. Surveillance agents watched the tractor-trailer make delivery of the sawdust.  During delivery, the driver of the pickup and Fortier both helped unload the tractor-trailer.

---

address.

Surveillance agents then saw that both trucks headed south on Interstate 89.  The two trucks made a short stop together at the rest areas between exits 18 and 19, then continued south on I-89 to exit 13, where they traveled on I-189 and then south on Route 7.  At that point, Agent Magdycz became concerned that he would lose the trucks in traffic on Route 7, and requested that the Vermont State Police stop Fortier's truck.

A marked state police car stopped Fortier and asked him to pull his truck into a parking lot, out of the traffic on Route 7.  Agent Magdycz briefly explained his investigation to the state trooper, and asked the trooper to identify the driver of the truck.  Fortier identified himself to a trooper, and informed the officer that he had come in alone from Canada the previous night, had spent the night at the Co-op Creamery in St. Albans, and was headed to New York.  Agent Magdycz then identified himself and questioned Fortier again about where he had spent the previous evening, with the same response.  Fortier also told Agent Magdycz that he was traveling alone, and that he had spent the previous evening alone. Fortier told Agent Magdycz that he was headed to Waterford, New York to pick up a load of paper

4

products.

Agent Magdycz then asked Fortier if he could search the truck, and Fortier agreed. During the search of the truck, Agent Magdycz found 2 x 4s and bolts sticking out of the front wall of the trailer, which he felt was consistent with a false wall. He called for a K-9 unit, in order to investigate the false wall more thoroughly. While they were waiting for the K-9 unit to arrive, Agent Magdycz confronted Fortier about his whereabouts the previous evening. Fortier admitted that he had spent the night at the truck stop in Swanton, and that he was traveling with Yves Rondeau, Jr., the driver of the pickup truck, and President of RTL Transport. He claimed that he had not seen Rondeau since leaving the McDonalds that morning, however. During this time, Fortier was also questioned by Vermont officers regarding commercial motor vehicle violations, including falsification of his log book.

The K-9 unit arrived about one hour after the initial stop. During the search, the dog alerted on the false wall. Agent Magdycz removed the wall with the assistance of local mechanics. The mechanics worked for a trucking company in whose parking lot the search was taking place. Upon

removing the wall, the officers discovered over 55 pounds of marijuana.  Fortier was placed under arrest, handcuffed, and advised of his <u>Miranda</u> rights.  Up until that point, Fortier had not appeared to have any trouble communicating with the officers.  However, Fortier now claimed that he did not understand much English.  Agent Magdycz then provided Fortier with a copy of the rights in French, and an agent fluent in French read the contents of the form to Fortier and asked Fortier if he understood his rights.  Fortier answered that he did and signed the <u>Miranda</u> form.

## Discussion

The Fourth Amendment prohibits unreasonable searches and seizures.  U.S. Const. amend. IV.  Police may stop and briefly detain a person, however, when they have reasonable suspicion of criminal activity.  <u>United States v. Arizu</u>, 534 U.S. 266, 273 (2002); <u>Terry v. Ohio</u>, 392 U.S. 1, 30 (1968).  Reasonable suspicion exists when, in light of the totality of the circumstances, a particularized and objective basis exists for suspecting the person stopped of criminal activity.  <u>Arizu</u>, 534 U.S. at 273-74; <u>Ornelas v. United States</u>, 517 U.S. 690, 696 (1996).  Reasonable suspicion is "not a high threshold," and is considerably less than proof

by a preponderance of the evidence.  <u>United States v. Lawes</u>, 292 F.3d 123, 127 (2d Cir. 2002).  The length of a particular stop is reasonable when the police act diligently in their investigation.  <u>United States v. Wong Ching Hing</u>, 867 F.3d 754, 757 (2d Cir. 1989).

In this case, the police had reasonable suspicion to stop Fortier's truck.  Fortier was driving an RTL transport truck.  Another RTL truck crossed the border shortly before him.  RTL trucks were known to have been used in smuggling marijuana in the past.  Agent Macdycz knew that the two RTL trucks were acting in a manner consistent with known patterns for drug smuggling.  He kept the trucks under surveillance, and had Fortier stopped only when he feared losing track of the truck as it headed south on Route 7, away from the Canadian border.  Fortier had told the border crossing agent of only one destination, had already left that destination, and was heading away from the border.  In addition, Fortier's actions after the initial stop gave the officers reasonable suspicion to continue the stop and investigation.  Fortier lied to the police officer and then to Agent Magdycz himself about traveling with another truck.  Although Agent Magdycz did not see Fortier actually engage

7

in any criminal activity, his knowledge of how drug smugglers operate, coupled with his observations of Fortier's actions and Fortier's lies to the police and to Agent Magdycz himself, gave Magdycz reasonable suspicion that Fortier was engaged in drug smuggling.  As such, the stop was a valid stop under Terry, and there was no violation of the Fourth Amendment.

Fortier also argues that his consent to the search of the truck was not voluntary, because of his limited ability to speak English.  The voluntariness of the search depends on the totality of the circumstances. United States v. Moreno, 897 F.2d 26, 33 (2d Cir. 1990).  Fortier was stopped by police for over an hour before the marijuana was discovered.  During that time he was interacting with different law enforcement officers about several different topics.  At no time before the discovery of the drugs did Fortier appear to have difficulty understanding or communicating with the officers.  Fortier's consent appears to have been voluntary.

In a supplemental brief, the government argues that the search was proper as an "extended border search."  The Second Circuit has recognized this concept.  See United

States v. Gaviria, 805 F.2d 1108, 1112 (2d Cir. 1986). Under an extended border search, a federal agent may conduct a warrantless search beyond the border if (1) the agent has reasonable certainty that a border was crossed; (2) there is reasonable certainty that no change in the object of the search has occurred between the crossing and the search; and (3) the agent has reasonable suspicion that criminal activity is occurring. United States v. Cardenas, 9 F.3d 1139, 1148 (5th Cir. 1993).

In this case, Agent Magdycz knew that Fortier's truck had crossed a border. Agent Magdycz had kept the truck under surveillance all night, and had the Vermont State Police stop the truck before he lost sight of it. Finally, as discussed, Agent Magdycz's knowledge of drug smuggling from Canada gave him reasonable suspicion that Fortier's truck was being used in a similar fashion. Even if the search of the vehicle was not consented to, then, it was valid as an extended border search.

Finally, Fortier asks this Court to suppress his statements to law enforcement officials, arguing that he was not given his Miranda warnings prior to questioning. In support of this argument, Fortier states that he was taken

into custody at the moment of the initial traffic stop.

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This privilege does not preclude voluntary statements, however, and a person generally must invoke the privilege in order to be protected by it. Minnesota v. Murphy, 465 U.S. 420, 427 (1984).

Because of the inherent pressures that exist in a custodial setting, the privilege against self-incrimination requires officers to give specific warnings to suspects during custodial interrogation. See Dickerson v. United States, 530 U.S. 428, 434-35 (2000); Miranda v. Arizona, 384 U.S. 436, 478 (1966). "Since Miranda, the Court has 'specifically stressed that it was the *custodial* nature of the interrogation which triggered the necessity for adherence to the specific requirements of its Miranda holdings.'" United States v. Rakowski, 714 F. Supp. 1324, 1333 (D. Vt. 1987) (quoting Beckwith v. United States, 425 U.S. 341, 346 (1976)). In other words, a suspect is entitled to Miranda warnings only when he is in custody at the time of the interrogation. Tankleff v. Senkowski, 135 F.3d 235, 243 (2d Cir. 1998).

The Second Circuit has directed that all circumstances must be examined when determining whether a suspect is in custody, and the test is an objective one.  Id. at 243. "[C]ustody exists for Miranda purposes if a reasonable person in that position would 'have felt he or she was not at liberty to terminate the interrogation and leave.'" Id. (quoting Thompson v. Keohane, 516 U.S. 99, 111 (1995)).  A person subject to a brief investigatory stop under Terry is not considered to be in custody for the purposes of Miranda. Berkemer v. McCarty, 468 U.S. 420, 440 (1984) ("The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that Terry stops are subject to the dictates of Miranda."). Likewise, traffic stops are not considered to be custody for the purposes of Miranda.  Id.

Fortier was pulled over and briefly questioned about his movements after crossing the border.  Although he may not have felt free to leave, he was not placed under arrest until the search of the truck revealed marijuana.  As already noted, Agent Magdycz's stop of Fortier was supported by reasonable suspicion, and was akin to a stop under Terry. As such, Fortier was not entitled to Miranda warnings until

he was placed under arrest after the search of the truck.

## CONCLUSION

For the foregoing reasons, I recommend that the Court DENY Fortier's motion to suppress. (Paper 7).

Dated at Burlington, in the District of Vermont, this 9th day of August, 2005.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge


Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).